# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00607-CR

**Marco Antonio Munoz, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY,
NO. C1CR07-218318, HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Marco Antonio Munoz of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West 2003). Munoz was sentenced to 180 days' imprisonment and assessed a $2,000 fine, probated to fourteen months of community supervision and a $1,800 fine. In three issues on appeal, Munoz argues that the trial court (1) improperly limited his trial counsel's voir dire questions regarding the venire panelists' ability to consider the full range of punishment; (2) improperly imposed a time limit on voir dire; and (3) demonstrated actual bias against Munoz and his counsel through its statements during voir dire. Because the trial court did not err in restricting Munoz's voir dire and did not demonstrate bias against Munoz or his counsel, we affirm the judgment of conviction.

## BACKGROUND

Munoz was arrested for driving while intoxicated on September 7, 2007. He was charged by information and went to trial on August 18, 2008. At jury selection, the trial court allotted thirty minutes to each side to conduct voir dire. Neither the State nor Munoz objected to the time limit or requested additional time.

During its voir dire, the State questioned the venire panel regarding their ability to consider the full range of punishment for the charged offense, a Class B misdemeanor DWI. The State told the panel:

> Now, the other thing that you will have to do is, if you believe that the defendant is guilty beyond a reasonable doubt, you'll have to assess punishment, and the punishment range is anywhere from three days up to the maximum of 180 days. And to be a juror on this panel, you have to be able to consider the full range. So you have to imagine in your mind a set of circumstances where three days is appropriate for somebody and all the way up to 180 days is appropriate.

The State then asked the panel, row by row, if anyone "would have trouble" considering the entire range of punishment. No panelists indicated they would.

Defense counsel also spoke to the panelists about the requirement that they consider the full range of punishment during his voir dire.[1] He then asked panelist one whether she thought "a three-day sentence is something that would be sufficient to send the message about DWI." The State objected that defense counsel was asking an improper commitment question. *See Sanchez v. State*,

---

[1] Defense counsel's examination regarding the range of punishment came near the end of his voir dire, after he had thoroughly questioned the panelists regarding their attitudes toward drinking alcoholic beverages, the accuracy of field sobriety tests, and the legal definition of "impairment," among other issues.

2

165 S.W.3d 707, 712 (Tex. Crim. App. 2005) (drawing distinction between questions "intended to discover bias against the law" and questions aimed at "determin[ing] how jurors would respond to the anticipated evidence and commit them to a specific verdict based on that evidence"). Defense counsel then argued that he could commit the panelists on their ability to give the minimum sentence because they are required to be able to consider the full range of punishment and, in this context, to consider means to give:

> If somebody ever said, I could consider probation for your loved one, I would never give it, but I could consider it, just like flapping my arms and flying like a bird, I could consider it. I would never do it. I could never give it. Is that a fair definition of "consider"? Who thinks that's a fair definition of "consider"?
>
> What about this: In order to be able to consider, you have to actually be able to give it. Does that make sense, [panelist twelve]?

The trial court interrupted defense counsel, saying, "Well, there's actually a difference and I think the courts have dealt with that difference." The Court then sustained the State's earlier objection as to form and told defense counsel, "If you want to ask it in a different form, you're certainly able to do so." The following exchange then took place:

> Defense: Is there anyone who thinks here that they would be able to consider something that they would never, ever do?
>
> Panelist: I don't understand the question.
>
> Defense: Exactly. I'm with you in the same place. What I'm trying to figure out is, there are some people who say three days is never enough punishment, and then a lot of times they come back and they can say, well, I could consider it, but then what do they say, [panelist eight]? But I'd never give it, to which I'd say, is that a fair definition of "consider"?

3

The Court:     [Counsel]—

Defense:     Yes, Judge.

The Court:     —I think that I have sustained the objection.

Defense:     Right. And now, Judge, I'm conducting voir dire as to find out these biases of these jurors, which will help me effectively exercise my peremptory challenges. So the data that I am getting is useful to me in representing Marco. So I would like to continue asking, not for purposes of committing this jury, but just for the purposes of getting data, which I believe is allowed under *Standefer*, *Maddox*, *Nunfio*, and all the cases that I've read.[2]

The Court:     Well, the State has objected, I believe, that your—what you're attempting to do is define "consider" in a way that is not the definition in statutory law, and—

Defense:     I mean, if you can show me the law, Judge, I'd be happy to read it. I just know I'm not aware of it. Now I'm just trying—

The Court:     It would be the case that I believe that you were overturned on appeal.

Defense:     The one that's still pending in front of the court of criminal appeals and probably going to come back the other way next month, that one?

The Court:     Right now the law is that you must be able to consider the full range of punishment, because the fact of the matter is you do not know what you will—what you will find out once you hear the evidence. Okay? You need to be able to consider the full range. If you cannot imagine a circumstance where you could give three days, then you say no, I cannot consider the full range of punishment.

---

[2] *See Standefer v. State*, 59 S.W.3d 177 (Tex. Crim. App. 2001); *Maddux v. State*, 862 S.W.2d 590 (Tex. Crim. App. 1991), *overruled by Standefer*, 59 S.W.3d at 180-81 ("Because *Maddux* was wrongly decided and produces inconsistency in our precedent, we overrule that decision."); *Nunfio v. State*, 808 S.W.2d 482 (Tex. Crim. App. 1991), *overruled by Barajas v. State*, 93 S.W.3d 36, 40 (Tex. Crim. App. 2002) ("We may overrule a prior case when the case was badly reasoned or is unworkable. The holding in *Nunfio* meets both criteria, and therefore, we overrule it.").

4

Defense: Well, I believe that was the first question I asked where I said some people say they will never give three days, which is what they objected to, which is what you sustained.

The Court: All right.

Defense: Now may I ask that question?

The Court: If you want to have each person answer that question, I have no problem with that.

Defense: I think now we all understand the question, and I'm saying that I —makes sense that some people would never, ever, ever give three days in jail to someone they found guilty of DWI. And I want to make sure that you understand that—

State: Again, I don't think that's the question that—

The Court: That's not the question.

Defense: Then move to strike.

Defense counsel then went on to discuss a possible scenario that might lead a jury to assess the maximum punishment, before saying:

[B]ut that's an easy case to establish people's minds of the worst drunk driver ever, but for some people the least egregious set of facts that they can conceive of, even those, maybe a week, maybe ten days, but three days is just never going to be [an] adequate deterrent, adequate punishment, adequate reason for what we have punishment for, and that's my question. Does it make sense, [panelist one]? I mean, tell me what you think—

The trial court again interrupted defense counsel.

The Court: It's a yes or no. Look, first of all, you're out of time. Second of all, it's a question, yes or no, can you consider the full range of punishment, which on a Class B misdemeanor DWI is anywhere between three and 180 days. If you can consider that, the answer is

5

yes. If you cannot consider it, then the answer is no. And we need to know one way or the other. I believe [counsel for the State] asked you this question and asked you to raise your hand.

Defense: Your Honor, I'm going to object to this, because it seems to me like you're—

The Court: [Counsel], you do not have the floor.

Defense: —trying to tell this jury what the answer you want them to give.

The Court: [Counsel], you do not have the floor.

Defense: I believe it's my voir dire, Your Honor. I believe I can conduct voir dire.

The Court: [Counsel], please have a seat.

Defense: Your Honor, I would like to conclude my voir dire. I would like to identify jurors who I have had answers to questions which I believe would lead to possible strikes for cause, and I need to—

The Court: So noted.

The trial court then again instructed defense counsel to have a seat and sent the jury out of the room.

Outside the presence of the jury, the trial court gave defense counsel the opportunity to make a proffer of the additional questions he wanted to ask the venire panel. Defense counsel first requested a mistrial, based on the trial court's statement that defense counsel had appealed and lost on the question of how to define "consider." After the trial court denied his request, defense counsel stated that he wished to question venire panelists one, seven, and thirteen, as well as all the panelists from the third and fourth rows, regarding their ability to consider giving the minimum three-day sentence. The trial court granted his request as to panelists one, seven, and thirteen and asked defense counsel, "So any other—anything else before we go over who else might need to come

before the Bench?" Rather than answering the trial court, defense counsel asked the State if it wanted to question anyone on the first two rows. After the State made its request, the trial court again asked defense counsel if he had anyone else to question on the first two rows, and he responded "No." The Court then asked both sides about the third row, and defense counsel said, "No, I don't have any others other than that."

During individual questioning at the bench, defense counsel asked panelists one, seven, and thirteen whether they could "consider giving" the three-day minimum sentence. Panelists one and seven said they could, panelist thirteen said, "I think that's too low." The trial court granted Munoz's motion to strike panelist thirteen for cause, and Munoz used peremptory strikes against panelists one and seven. Munoz did not request any additional peremptory strikes nor express any concern that he was not able to thoroughly voir dire any of the panelists selected to serve on the jury.

## DISCUSSION

*Restrictions on Defense Voir Dire*

In his first and second points of error, Munoz contends that the trial court improperly limited his ability to question the venire panel regarding the range of punishment.

The voir dire process allows counsel to determine if any venire panelist is biased for or against one of the parties or the relevant law and facilitates the intelligent use of peremptory strikes. *See Sanchez*, 165 S.W.3d at 711. Therefore, the scope of a permissible voir dire examination is necessarily broad to enable counsel to discover any potential bias or prejudice. *Id.* At the same time, the trial court is given broad discretion to control the voir dire examination of the venire and may impose reasonable restrictions on the questions asked and the length of the

7

voir dire examination. *Ratliff v. State*, 690 S.W.2d 597, 599 (Tex. Crim. App. 1985). "These two principles—the right of counsel to question veniremembers and the right of the trial court to control voir dire and impose reasonable restrictions—co-exist and must be harmonized." *Id.*; *see also Morris v. State*, 1 S.W.3d 336, 340 (Tex. App.—Austin 1999, no pet.).

We review a trial court's restrictions on jury voir dire for an abuse of discretion. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); *Morris*, 1 S.W.3d at 340. A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry, *see Barajas*, 93 S.W.3d at 38, or when it arbitrarily limits the amount of time allowed for voir dire examination, *see Morris*, 1 S.W.3d at 339.

Munoz first argues that the trial court improperly prevented his counsel from asking questions of the venire panel regarding their ability to consider the minimum punishment of three days. Bias against the range of punishment is a proper area of inquiry during voir dire for both challenges for cause and peremptory strikes. *See Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001) ("[A] prospective juror must be able to consider the full range of punishment provided for an offense or be challengeable for cause."). However, an otherwise proper question is impermissible if it attempts to commit the venire panelist to a particular sentence based on particular facts, *see Barajas*, 93 S.W.3d at 38; *Standefer*, 59 S.W.3d at 181, or is confusing or misleading, *see Howard v. State*, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996); *Bolden v. State*, 73 S.W.3d 428, 430 (Tex. App.—Houston [1st Dist.] 2002, no pet.). When the trial court sustains an objection to the form of a question but does not restrict counsel from pursuing the underlying area of inquiry, "counsel must rephrase the improperly phrased question or waive the voir dire restriction." *Bolden*,

8

73 S.W.3d at 431 (citing *Howard*, 941 S.W.2d at 108; *Trevino v. State*, 815 S.W.2d 592, 601 (Tex. Crim. App. 1991)).

Here the trial court did not restrict Munoz's counsel from examining the venire panel on their ability to consider the entire range of punishment. Rather, it simply ordered counsel to re-phrase his question so as to avoid improperly committing the panelists to giving the three-day minimum sentence under specific circumstances, *see Standefer*, 59 S.W.3d at 177 (question is improper if it includes facts in addition to those necessary to establish challenge for cause), or confusing the jury with a definition of "consider" not found in Texas statutory or case law, *cf. Lagrone v. State*, 942 S.W.2d 602, 609 (Tex. Crim. App. 1997) (trial court does not abuse its discretion by refusing to permit counsel to question veniremember regarding his definition of the term "probability"); *Wheatfall v. State*, 882 S.W.2d 829, 835 (Tex. Crim. App. 1994) (trial court does not abuse its discretion by refusing to permit counsel to question veniremember regarding his definition of the term "deliberately"). Munoz's counsel, rather than rephrasing the question, continued to expound upon his understanding of the meaning of the word "consider." When he asked the panel about his definition, the only panel response was "I don't understand the question." At that point, the trial court stepped in and accurately and succinctly explained the requirement to the jury, saying, "You need to be able to consider the full range. If you cannot imagine a circumstance where you could give three days, then you say no, I cannot consider the full range of punishment." Defense counsel then asked for permission to ask that question and was granted it. But instead of asking that question, he launched into a hypothetical and then asked a panelist, "Does that make sense? What do you think?" The trial court again stepped in to prevent what it perceived to be an overly broad formulation of the question. *See Smith v. State*, 703 S.W.2d 641, 645

9

(Tex. Crim. App. 1985) (seeking panelists' "thoughts" is improperly broad; it presents general topic for discussion rather than seeking particular information).

The record does not reveal any abuse of discretion by the trial court. *See Duffey v. State*, 249 S.W.3d 507, 512 (Tex. App.—Waco 2007, pet. ref'd) (trial court does not abuse discretion by excluding confusing and improperly phrased question). Rather, it shows that defense counsel was given several opportunities to rephrase his improperly phrased questions and even given approval for a specific form of the question, which he then failed to ask. Instead, defense counsel used the rest of his allotted time to continue asking improper questions of the jury regarding the definition of "consider." Furthermore, defense counsel was later given another opportunity to question individual panelists at the bench regarding their ability to consider the full range of punishment.

Even if the trial court's rulings on Munoz's discussion of the definition of "consider" had been error, it was harmless. *See Gonzales v. State*, 994 S.W.2d 170, 171 (Tex. Crim. App. 1999) (stating that trial court's impermissible exclusion of proper question during voir dire is subject to harmless-error analysis). The trial court provided the jury with an accurate explanation of the requirement that the jury be able to consider the full range of punishment and allowed trial counsel the opportunity to question individually the jurors about whom he expressed concerns. None of these jurors ultimately served on the jury. Therefore, we are convinced beyond a reasonable doubt that Munoz was not harmed by the trial court's rulings on the form of the range of punishment questions. *Gonzales*, 994 S.W.2d at 171 (right to pose proper questions during voir dire examination is included within constitutional right to counsel); *Howard*, 941 S.W.2d at 108 (same); Tex. R. App. P. 44.2(a) (court of appeals must reverse for constitutional error unless it determines beyond a

10

reasonable doubt that error did not contribute to conviction or punishment). We overrule Munoz's first point of error.

Munoz next argues that the trial court improperly imposed a time limit on defense counsel's voir dire when it stopped him during his last attempt at questioning the panel regarding the range of punishment. To determine whether the imposition of a time limit on voir dire was an abuse of discretion, we ask: (1) whether defense counsel attempted to unnecessarily prolong the voir dire; (2) whether the questions that he was not permitted to ask were proper voir dire questions; and (3) whether the defendant has shown that any unexamined panelists actually served on the jury. *See Ratliff*, 690 S.W.2d at 600; *Wappler v. State*, 183 S.W.3d 765, 773 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *Morris*,1 S.W.3d at 340.

Here, Munoz's counsel was able to conduct a thorough voir dire on the panelists' attitudes toward drinking alcoholic beverages, the accuracy of field sobriety tests, and the legal definition of "impairment" before questioning them regarding the range of punishment. At the time he was cut off, however, defense counsel was prolonging voir dire by continuing to expound on his definition of "consider" despite the unfavorable ruling from the trial court and even after receiving approval for a properly phrased question. It was the improperly phrased and confusing questions regarding his definition that defense counsel was not permitted to ask. After the jury was sent out of the room, defense counsel stated that his objection to being cut off was that there were certain individual panelists—specifically panelists one, seven, and thirteen, and all those on the third and fourth row—that he needed to question further in order to adequately represent Munoz. The trial court then granted permission for defense counsel to question panelists one, seven, and thirteen individually on their ability to consider the full range of punishment. Munoz did not make a proffer

11

of any other questions that counsel desired to ask the entire panel or any individual panelists. Further, each of the three panelists defense counsel did question individually were eventually struck. The record does not indicate that Munoz sought any additional peremptory strikes, nor does it indicate that any of the unexamined panelists on the third or fourth row served on the six-person jury.[3] *See Morris*, 1 S.W.3d at 340 (to show abuse of discretion through imposition of voir dire time limit, defendant must show that unexamined panelist actually served on jury); *cf. Green v. State*, 934 S.W.2d 92, 105 (Tex. Crim. App. 1996) (to preserve error for denial of valid challenge for cause, appellant must show he used peremptory challenge on that juror, that all his peremptory challenges were exhausted, that his request for additional strikes was denied, and that an objectionable juror sat on jury). Therefore, we hold that the trial court did not abuse its discretion in imposing a time limit on defense counsel's voir dire examination. We overrule Munoz's second point of error.

*Alleged Bias*

In his third point of error, Munoz contends that the trial court "made improper and inaccurate statements before the venire that exhibited a personal prejudice against appellant's counsel." Munoz does not point to any particular statements or cite to the record, nor does he point to any legal authority to explain how these unspecified statements demonstrate bias. *See* Tex. R. App. P. 38.1(i) (appellants' brief must contain appropriate citations to authorities and the record).

---

[3] After accounting for absent panelists and the panelist who was struck for cause, the trial court noted that only the first fifteen panelists were in the pool for peremptory strikes. Munoz did not, at that time or any other time, express concern that there were any panelists from the third or fourth row who were in the pool whom he needed to examine regarding their ability to consider the full range of punishment.

12

In the absence of clear proof to the contrary, we presume a trial judge is impartial and unbiased. *See Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). To warrant reversal for bias, statements by the trial court must demonstrate bias "of such a nature and to such an extent as to deny a defendant due process of law."[4] *Wesbrook v. State*, 29 S.W.3d 103, 121 (Tex. Crim. App. 2001).

We have conducted a thorough review of the statements the trial court made before the venire panel and see no statements that indicate bias. While the trial court ruled against Munoz and asked him to rephrase his questions several times, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Garcia v. State*, 246 S.W.3d 121, 147 (Tex. App.—San Antonio 2007, pet. ref'd). Furthermore, "expressions of impatience, dissatisfaction, annoyance, and even anger" do not constitute bias, and "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Liteky*, 510 U.S. at 556; *see also Garcia*, 246 S.W.3d at 147. Therefore, even the trial court's statements that prompted Munoz's request for a mistrial—her remark that defense counsel had "been overturned" on appeal—and her

---

[4] Munoz moved for a mistrial on the basis of the trial court's statement that defense counsel had been "overturned on appeal," arguing that the statement "is factually incorrect, and even if it were correct, I believe that is an improper statement to make in front of the jury in [this] case." However, he did not suggest at trial that the court's comments were indicative of bias, nor did he request that the judge recuse herself. So, to the extent Munoz argues that the trial court's alleged bias warranted recusal, he has not preserved error. *See Owens v. State*, 202 S.W.3d 276, 278 (Tex. App.—Amarillo 2006, no pet.); *Harris v. State*, 160 S.W.3d 621, 625 (Tex. App.—Waco 2005, no pet.). To the extent that Munoz argues that the trial court's alleged bias warranted disqualification, he must also show that the alleged bias stems from an extrajudicial source and "provide facts sufficient to establish that a reasonable man, knowing all the circumstances involved, would harbor doubts as to the judge's impartiality." *Owens*, 202 S.W.3d at 278.

instructions for counsel to sit down after he had reached his time limit do not support an inference of bias. We overrule Munoz's third point of error on appeal.

## CONCLUSION

Having overruled all points of error on appeal, we affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   September 23, 2009

Do Not Publish